UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICKY JOSEPH ALEX                        CIVIL ACTION NO. 03-0030

VERSUS                                   JUDGE WALTER

RICHARD L. STALDER, ET AL                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Ricky Joseph Alex ("Plaintiff") is an inmate housed at the David Wade Correctional Center. He filed this civil action in 2003 against several prison officials to complain about being denied a mattress at times when he was in isolation, having his diet limited to food loaf, cold temperatures in his cell, and other matters. This court dismissed the complaint as frivolous. Plaintiff appealed with respect to some of his claims. The Fifth Circuit affirmed the dismissal of the complaint except with regard to the cold temperatures in Plaintiff's cell. The Fifth Circuit determined that Plaintiff had alleged a non-frivolous Eighth Amendment violation based on the assertions that Plaintiff had been held in very cold conditions, for an extended period in November and December, wearing only a paper gown during the daytime, and being ordered to remain on cold concrete whenever he attempted to sleep on a warmer, metal bunk. See Doc. 43 and Alex v. Stalder, 225 Fed. Appx. 313 (5th Cir. 2007).

The court ordered the Defendants to be served with the complaint and file a response. Defendants filed a Motion to Dismiss (Doc. 58) that raises several defenses, including lack

of administrative exhaustion before this civil action was filed. It is recommended, for the reasons that follow, that the motion be granted.

**Exhaustion of Administrative Remedies**

    **A. General Requirement; Conversion of Motion**

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court recently held that this exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

When ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). For that reason, an affirmative defense is "generally not the proper subject of Rule 12(b)(6) motions." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 n. 3 (5th Cir. 1997). The motion can prevail on the defense only if the grounds for dismissal "clearly appear on the face of the plaintiff's complaint." Id. And prisoners need not "specifically plead or demonstrate exhaustion in their complaints" to avoid 12(b)(6) dismissal. Jones, 127 S.Ct. at 921.

The exhaustion issue is more capable of resolution in this case than the ordinary case because Plaintiff did attach to his complaint and amended complaint several documents related to his administrative efforts. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). That rule permits consideration of the exhibit in a Rule 12(b)(6) contest. Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007). However, Defendants submitted with their motion a document (Doc. 58) from the administrative process that does not appear as an exhibit to the complaint. Reliance on the extra-complaint document requires that the motion to dismiss be converted to a motion for summary judgment. It is hereby converted, and Plaintiff will be permitted the ten-day objections period that follows this Report and Recommendation to submit any competent summary judgment evidence that he may possess relevant to the exhaustion issue. This procedure will satisfy the notice requirement of Fed. R. Civ. P. 56(c). See also Fed. R. Civ. P. 12(d) (effective Dec. 1, 2007; formerly found in Rule 12(b)).

### B. General Provisions of the ARP

A brief review of the Administrative Remedy Procedure ("ARP") adopted by the Department of Public Safety and Corrections will assist in assessing Plaintiff's efforts. The procedure, published in the Louisiana Administrative Code at Title 22, Part I, § 325, permits inmates to request administrative remedies to situations arising from policies, conditions or events within the institution that affect the inmate. The ARP explains that there are other,

specific remedy procedures for disciplinary matters and lost property claims, so those matters are not appealable through the general ARP.

An inmate commences the ARP process by writing a letter to the warden. The letter should briefly set out the basis for the inmate's claim and the relief he seeks. An ARP form is also provided for this purpose. The requests are screened by an ARP screening officer, who is a staff member designated by the warden, and the screening officer will then send the inmate a notice advising that his request (1) is being processed or (2) has been rejected by the screening officer.

If the grievance is accepted for processing, the warden (or a staff person assigned by her) will conduct fact finding and/or information gathering and provide a response to the inmate within 40 days. An inmate who is dissatisfied with the first-step response may appeal to the Secretary of the Department. If the inmate is not satisfied with the second-step response, he may file suit.

**C. Relevant Facts**

Plaintiff filed two grievances related to the allegedly cold conditions. The first grievance is dated November 4, 2002 and was assigned No. DWCC-02-1511. Plaintiff complained in the grievance about his conditions (food loaf, paper gown, cold temperature) as well as alleged retaliation for filing past lawsuits and a recent loss of 180 days of good time. Plaintiff asked for relief including bedding, food and a restoration of good time credits. Doc. 1, p. 22.

The ARP screening officer is authorized to "reject" a grievance rather than assign it to an appropriate person for a step-one response. The policy explains that a grievance may be rejected for approximately 10 specific reasons. The reasons include that the grievance addresses issues such as disciplinary matters that are subject to specialized procedures, the grievance is untimely, or the inmate has requested a remedy for more than one incident (a "multiple complaint").

Screening officer Becky Moss issued a notice that grievance DWCC-02-1511 was rejected because it presented multiple issues, and one of the issues was a disciplinary matter that must be addressed through the DBA process. Doc. 1, p. 15. Plaintiff did not pursue that grievance further, and he does not urge in his opposition to the motion that he satisfied the exhaustion requirement through this procedurally deficient process.

Plaintiff bases his response to the motion on another grievance, DWCC-02-1549. That grievance is dated November 14, 2002. It is similar to the rejected grievance and requests similar forms of relief, but it was not rejected. Doc. 1, p. 21. After the grievance was pending before the screening officer for about two weeks, the screening officer issued a notice dated November 25, 2002 that the request had been accepted and: "a response will be issued within 40 days of this date." Doc. 1, p. 14. That was consistent with the ARP policy, which, under the heading Deadlines and Time Limits, provides: "Time limits begin on the date the request is assigned to a staff member for the first-step response."

Accordingly, the 40-day deadline for the response in this case would have been January 4, 2003.

The policy provides for extensions of time by both inmates and the warden. Relevant here, it provides:

> The warden may request permission for an extension of not more than five days from the assistant secretary of Adult Services for the step one review/response. The inmate must be notified in writing of such an extension.

On January 3, 2003 (one day before the deadline), Deputy Assistant Secretary Linda Ramsay issued a memorandum stating that a member of the David Wade staff had, on that date, requested a five-day extension to the time limits for the first step response. The memo, addressed to Plaintiff, states that the extension was granted. Doc. 58. That made the extended deadline January 9, 2003.

Plaintiff, apparently not aware that prison officials had requested an extension of time and not yet in receipt of Ms. Ramsay's memo, signed his judicial complaint on January 5, 2003, the day after the original deadline, and mailed it to this court, where it was filed on January 7, 2003. Plaintiff alleged in his complaint that his grievance had not received a response within 40 days, and he asked the court to order Defendants to finalize the grievance proceedings, after which time he would supplement his civil action with that information. Doc. 1, p. 6.

In the meantime, on January 6, 2003, Deputy Warden Jerry Goodwin issued a first-step response. He began by recounting how Plaintiff had been placed in restricted conditions

as part of a response to a violent attack in which Plaintiff had used a razor blade to inflict three lacerations to another inmate's arm while Plaintiff was being escorted to the exercise yard. Goodwin wrote that Plaintiff had, in accordance with written policies, received a mattress and bed linens each night at 9:00 p.m., Plaintiff had been allowed to perform legal work for one hour each day, and he had received a 10-minute shower break. With regard to the complaint of 40 degree temperatures, Goodwin wrote that the allegation "simply is not true." All relief was denied.

Plaintiff, on January 7, 2003, sought relief at step two on the grounds that the deprivation of his mattress at the times before 9:00 p.m. was unlawful. Doc. 18, p. 4. Secretary Stalder's designee issued a decision on February 14, 2003 that concluded Plaintiff was being managed according to policy and procedure. Doc. 18, p. 3.

### D. Analysis

The Supreme Court emphasized in Woodford that prisoners must properly exhaust their remedies in accordance with prison procedures. Plaintiff eventually exhausted his administrative remedies, but he did not do so until *after* he filed his complaint in this civil action. The Fifth Circuit has held that dismissal is required when a prisoner fails to exhaust before he files suit, even if the grievance is pending at the time the suit is filed. Wendell v. Asher, 162 F.3d 887 (5th Cir. 1998). The prisoner in Wendell had a grievance pending, but he filed suit before Texas prison officials filed a step-two response. The Fifth Circuit held

that, given the statutory mandate of Section 1997e, it had to affirm the district court's dismissal without prejudice for failure to exhaust administrative remedies prior to filing suit.

In a similar setting, a prisoner filed suit and later exhausted his administrative remedies. The district court dismissed the action with prejudice to refiling with pauper status, and the Fifth Circuit affirmed. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998). The dismissal was deemed to serve as a deterrent to premature filings, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation and discouraging premature filings. Underwood, 151 F.3d at 296.

These precedents were well established by 2003 when Plaintiff, an experienced litigator (court records indicate that he was a plaintiff in six earlier cases) filed this civil action. Plaintiff may have believed at the time he filed his complaint that he had exhausted his remedies because prison officials did not respond within the initial 40-day period.[1] But Plaintiff would have been alerted immediately thereafter, when he received notice of the extension of time, that the administrative process was not yet complete. Plaintiff could and should have dismissed his judicial complaint without prejudice once he realized that he had not exhausted his administrative remedies before he filed suit. Plaintiff could have later refiled the suit after the administrative process was completed. Plaintiff did not do that, so his complaint should now be dismissed with prejudice to refiling in forma pauperis.

---

[1] "[A]vailable administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired." Underwood, 151 F.2d at 295.

This may seem a bit harsh, considering the circumstances, but this court is besieged with unexhausted prisoner complaints. The court once raised the lack of exhaustion sua sponte and swiftly terminated those cases, but the Supreme Court has now held that exhaustion is an affirmative defense that the defendants must raise. <u>Jones v. Bock</u>, 127 S.Ct. 910, 921 (2007). The unexhausted complaints are now a greater burden on the courts, society and the taxpayers because the court may not quickly dismiss the complaint but must order service on the defendants, have the marshal serve the defendants with summonses and copies of the complaint, and the defendants must then pay lawyers to file motions that raise the exhaustion defense. These burdens make it more important now than ever to discourage the premature filing of unexhausted prisoner complaints. The law is clear that exhaustion must be completed before the suit is filed. If the court attempts to carve out exceptions here and there, it will be counter-productive to the constant efforts to inform prisoners of the exhaustion requirement and have them respect it.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 58)** be **granted** and that all claims against all Defendants be **dismissed with prejudice** to refiling in forma pauperis.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of December, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE